IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

---

LIATRIZ LEVY, *et al,*.

    Plaintiffs,

    v.                                                        No. 1:23-cv-00733-KWR-KK

RAYMOND JAMES FINANCIAL
SERVICES, INC.

    Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION

**THIS MATTER** comes before the Court upon the Motion to Compel Arbitration (Doc. 3) filed by Defendant, Raymond James Financial Services, Inc. ("Defendant"). Having reviewed the parties' pleadings related to the motion and the applicable law, the Court finds that Defendant's motion to compel arbitration is meritorious and therefore, **GRANTED**. Defendant's request to stay this proceeding pending the arbitration outcome is **GRANTED**.

### BACKGROUND

This is an action arising out of a contracts dispute over the validity and enforceability of arbitration provisions in contracts between Plaintiffs and Defendant. Federal jurisdiction is alleged pursuant to the Federal Arbitration Act ("FAA"), 9 USC §§1, *et seq*.

Plaintiffs Baland and Levy ("Plaintiffs") are New Mexico residents and registered representatives formerly affiliated with Raymond James Financial Services, Inc., a securities broker-dealer and FINRA member. According to Defendant, Raymond James Financial Services Advisors, Inc., a Florida corporation, loaned Plaintiffs cumulatively $775,000.00 pursuant to Affiliation Loan Agreements and related Bonus Agreements executed on April 19, 2022. Complaint, at ¶ 30. Section 12

of the Bonus Agreements and Section 13 of the Affiliation Loan Agreements state, "[t]he parties agree that any dispute, claim, or controversy concerning this Agreement shall be resolved by binding arbitration in accordance with the then existing rules of FINRA and its Code of Arbitration Procedure." Doc. 3, Exs. A and B at 6, 13.

Both Plaintiffs signed a "Uniform Application for Securities Industry Registration or Transfer," also known as a Form U-4, as part of their affiliation with Raymond James. Section 15(A)(5) of the Form U-4 states, "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm…that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs indicated in Section 4…as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction." *See* Exs. C and D.

Plaintiffs' registrations with Raymond James terminated on or about April 21, 2023. Decl., at ¶ 12. According to the terms of the Affiliation Loan Agreements, if Plaintiffs' registrations with Raymond James terminated, the entire outstanding loan balance plus ten percent interest from the date of termination would be immediately due to Raymond James. Exs. A and B. According to Defendant, Plaintiffs have refused to pay the outstanding loan balance, interest, and fees. Doc. 3 at 5.

On May 15, 2023, Defendant filed FINRA arbitration actions against Plaintiff David Baland for $397,970.45 and Plaintiff Liatriz Levy for $265,313.65 in outstanding principal, interest, attorneys' fees, and costs and expenses pursuant to the loan agreements. Doc. 3 at 5; Ex. A.

On August 8, 2023, in connection with Defendant's arbitration actions, Plaintiffs signed FINRA Uniform Submission Agreements, whereby Plaintiffs agreed to "submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related cross claims, counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure." Exs. E and F. Plaintiffs subsequently

filed this action and moved to stay the arbitrations seeking to void the loan agreements with Raymond James claiming fraud in the inducement.

On August 16, 2023, Plaintiff Levy signed a second Uniform Submission Agreement agreeing to submit all claims, answers, cross claims, counterclaims, and third-party claims, via the FINRA arbitration process.  Ex. G.

## DISCUSSION

Defendant asks this Court to enter an order compelling arbitration of all of Plaintiffs' claims pursuant to the Federal Arbitration Act and to stay this action pending a ruling on this Motion and the arbitration outcome.  Doc. 3 at 1.  Plaintiffs ask this Court to find that Defendant fraudulently induced Plaintiffs into signing the loan agreements, and therefore, rescind the loan balances, and award substantial damages suffered from Raymond James' alleged misconduct.  Doc. 10 at 3.  At issue is whether Plaintiffs' claims against Defendant must be arbitrated.

**I.      The Federal Arbitration Act Applies**

The Federal Arbitration Act ("FAA") applies to any contract evidencing a transaction involving commerce containing a written arbitration agreement.  *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 273 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995) citing, 9 U.S.C. § 2; *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 931 (10th Cir. 2001); *Foster v. Turley*, 808 F.2d 38, 40 (10th Cir. 1986).

While the FAA favors arbitration agreements, a legally enforceable contract is still a prerequisite for arbitration, and without such a contract, parties will not be forced to arbitrate.  *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (stating that the presumption in favor of arbitration is reversed when there is a dispute as to the existence of an agreement).  Thus, "the first task of a court asked to compel arbitration of a dispute is to determine

whether the parties agreed to arbitrate that dispute*."* *Dodson Int'l Parts, Inc. v. Williams Int'l Co. LLC*, 12 F.4th 1212, 1219 (10th Cir. 2021) citing, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 562 U.S. 287, 301, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010).  "The issue of whether an arbitration agreement was formed between the parties must always be decided by a court, regardless of whether the alleged agreement contained a delegation clause or whether one of the parties specifically challenged such a clause." *Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1105–06 (10th Cir. 2020). "[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." *Granite Rock*, 561 U.S. at 297.

"[A]rbitration is a matter of contract ... to determine whether a party has agreed to arbitrate a dispute," the court applies "ordinary state-law principles that govern the formation of contracts." *Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1304 (10th Cir. 2017) (internal citations and quotation marks omitted).  "[T]o determine whether the agreement to arbitrate is valid, courts look to general state contract law, with the caveat that state laws that are specifically hostile to arbitration agreements are preempted by the FAA." *Laurich v. Red Lobster Rest., LLC*, 295 F. Supp. 3d 1186, 1206 (D.N.M. 2017).

Under Florida law, to prove the existence of a legally enforceable contract, a plaintiff must establish an offer, acceptance, consideration, and sufficient specification of the essential terms.[1]  *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 857 F. Supp. 2d 1294, 1301 (S.D. Fla. 2012), aff'd, 714 F.3d 1234 (11th Cir. 2013) citing, *St. Joe Corp. v. McIver*, 875 So.2d 375, 381 (Fla.2004) (citing *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So.2d 297, 302 (Fla.Dist.Ct.App.1999)); *Vega v. T—Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009).

---

[1] The loan agreements stipulate that the laws of the State of Florida shall govern interpretation.  *See* Exs. A and B, ¶ 13.

The FAA articulates a strong national policy in favor of arbitration and "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  Ultimately, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

Here, the parties agreed to a legally enforceable contract and to arbitrate disputes arising from the contract.  Applying Florida law, neither party disputes the formation of valid contracts through offer, acceptance, consideration, and sufficient specification of the essential terms.  Nor does the record support a finding that questions the contracts' validity or the validity of the arbitration provisions.  As to the arbitration clauses, the loan agreements at issue specifically state, "any dispute, claim, or controversy concerning this Agreement shall be resolved by binding arbitration in accordance with the then existing Rules of FINRA and its Code of Arbitration Procedure." Exs. A and B, ¶ 13.  Both parties agree that the loan agreement contracts contain arbitration provisions, but rather Plaintiffs dispute the circumstances under which they consented to these terms.  Plaintiffs assert the affirmative defense of fraud in the inducement which as this Court will shortly address, requires reference to an arbitrator via *Prima Paint*. Furthermore, a fraud in the inducement challenge to a contract does not render the contract *void ab initio* but rather voidable*. See Fed. Sav. & Loan Ins. Corp. v. Gordy*, 928 F.2d 1558, 1565 (11th Cir.1991) ("Fraud in the inducement ... render[s] the instrument merely voidable and thus capable of transfer."). Voidable contracts while subject to rescission, still create legal obligations, which is critical in

determining if a contract exists for purposes of arbitration. *Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 994 (11th Cir. 2012) citing, *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 31 (2d Cir.2001). Nevertheless, in light of *Buckeye Check Cashing*, fraud in the inducement challenges must be referred to arbitration, and the Supreme Court did not address whether courts should distinguish between void versus voidable in fraud in the inducement challenges. Therefore, the Court finds the loan agreements and arbitration provisions referenced in Exhibits A and B are valid and legally enforceable.

Since the Court has found the parties contractually agreed to a written arbitration agreement, the Court also finds the loan agreements between Plaintiffs and Defendant are governed by the FAA. These contracts involve commerce and affect it within the meaning of Section 2 of the FAA. The FAA applies "in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice subject to federal control." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003). The interstate loans between Defendant, a Florida brokerage firm, and Plaintiffs, residents of New Mexico, in the aggregate, "bear on interstate commerce in a substantial way." *Id*. Given the loans' purpose, to recruit registered representatives to facilitate the buying and selling of securities, the commerce requirement is satisfied.

The loan agreement contracts evidence a transaction involving commerce and contain a written arbitration agreement as required by *Allied-Bruce Terminix Companies, Inc. v. Dobson*. Furthermore, the rigorous enforcement and favorability of arbitration agreements as a matter of federal policy move this Court to find that the loan agreements and Plaintiffs' claims are subject to the FAA. *See Dean Witter Reynolds, Inc.* 470 U.S. at 218; *AT&T Mobility LLC v. Concepcion*, 563 U.S. at 251.

**II.     FAA Requires the Arbitration of Plaintiffs' Claims**

Plaintiffs assert via a fraud in the inducement theory that their claims are not subject to arbitration because they are enforceable under the New Mexico Uniform Arbitration Act, NMSA 1978, Section 44-7A-8, nor do FINRA Rules require arbitration. Doc. 10 at 4-6, 8. Plaintiffs further contend that in instances of fraud in the inducement, this Court has discretion under the FAA to deny arbitration. *Id*. Plaintiffs claim the motion to compel arbitration before the Court seeks "essentially fruit from a poisonous tree – brokered by deception and unfair dealing." Doc. 10 at 1. Defendant "deceptively lured Plaintiffs into a business agreement" as outlined in Plaintiffs' Complaint for Fraudulent Inducement. *Id*. at 2. In essence, Defendant "fraudulently hid" from Plaintiffs Raymond James' deteriorating relationship with Concurrent, an investment advisor group, during recruitment efforts. *Id*. at 2-3. Because of this fraud, Plaintiffs were induced into signing the loan agreements at issue. *Id*. Therefore, Plaintiffs seek "a declaration that the TAL [Transition Assistance Loan] agreements are void in their entirety" and not subject to arbitration. Complaint at 11; Doc. 10 at 5.

While Plaintiffs may have separate state law claims against Defendant, the FAA preempts state law as to arbitration agreements. *Allied-Bruce Terminix Companies, Inc.*, 513 U.S. at 272 citing, *Southland Corp. v. Keating*, 465 U.S. 1, 104 S. Ct. 852, 860-61 79 L. Ed. 2d 1 (1984). State statutes cannot be held to invalidate arbitration agreements, and therefore, New Mexico law cannot trump the applicability of the FAA as to Plaintiffs' claims. *Id*.

Even if New Mexico arbitration law were to apply, under NM Stat § 44-7A-7(c), arbitrators decide conditions precedent to arbitrability and whether such arbitration agreements are enforceable. NM Stat § 44-7A-7 (2021). New Mexico courts have interpreted both § 44-7A-7 and 8 to permit courts to examine the specific enforceability of arbitration provisions. However, when the validity of the underlying contract is challenged, as is the case here via a fraud in the inducement defense, arbitration is required. *La Frontera Center, Inc. v. United Behavioral Health, Inc.*, 268 F.Supp.3d 1167 (D. N. M.

2017).  Regardless, Plaintiffs' state law arguments are preempted by the FAA.  *Clay v. New Mexico Title Loans, Inc.*, 2012-NMCA-102, 288 P.3d 888, 893; *Allied-Bruce Terminix Companies, Inc.*, 513 U.S. at 272-73; *AT&T Mobility LLC*, 563 U.S. at 341.

Moreover, Plaintiffs' fraud in the inducement challenge to the agreements in their entirety must be submitted to arbitration.  In *Prima Paint*, the Supreme Court faced the issue of "whether a claim of fraud in the inducement of the entire contract is to be resolved by the federal court, or whether the matter is to be referred to the arbitrators." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).  The Court reaffirmed this in *Buckeye* when it ruled, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 126 S. Ct. 1204, 1206 163 L. Ed. 2d 1038 (2006).  "Regardless of whether it is brought in federal or state court, a challenge to the validity of a contract as a whole, and not specifically to the arbitration clause within it, must go to the arbitrator, not the court." *Id*.  Section 4 of the FAA specifically provides that a court shall order arbitration once it determines the making of the arbitration agreement or failure to comply is not at issue.  *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1210 (10th Cir. 2016) citing *Prima Paint*, 388 U.S. at 1801.  Therefore, because fraud in the inducement as to the entire contract rather than just the arbitration agreement was at issue, arbitration was required. *Id*.

Here, Plaintiffs assert the affirmative defense of fraud in the inducement as to the entire loan agreements, not specifically the arbitration provisions with them.  Doc. 10 at 1-3.  As such, Plaintiffs ask this Court to invalidate the agreements in their entirety.  The validity of the contract and arbitration agreements itself is not at issue as this Court has outlined, and Plaintiffs have not specifically challenged the validity of the arbitration clauses.  Since these loan agreements are subject to the FAA, in line with

8

the Supreme Court's precedents in *Prima Paint* and *Buckeye*, Plaintiffs' claim challenging the validity of the agreements in their entirety and asserting fraud in the inducement must be referred to arbitrators. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. at 446; *Prima Paint*, 388 U.S. at 1801; *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1.  Therefore, Defendant's motion to compel arbitration is granted.

### III.    FINRA Rules Require Arbitration

FINRA Rule 13200 requires the arbitration of this dispute.  FINRA Rule 13200 states, "a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among…Members and Associated Persons."  *See* FINRA, Rule 13200.  Furthermore, FINRA rule guidance emphasizes the importance of arbitration obligations as to Rule 13200: [i]t may be deemed conduct inconsistent with just and equitable principles of trade and a violation of Rule 2010 for a member or a person associated with a member to…(a) fail to submit a dispute for arbitration under the Code as required by the Code.  *See* FINRA, IM-13000.

It is undisputed that Raymond James is a FINRA member, and that Plaintiffs were registered representatives associated with Raymond James.  It is also undisputed that the loan agreements at issue arose out of business activities between Plaintiffs and Defendant.  Given how liberally the Tenth Circuit interprets "arising out of" language in arbitration clauses, the loan agreements in question arose from efforts to establish Plaintiffs as registered representatives of Defendant engaged in the securities business, surely business activities.  *Williams v. Imhoff*, 203 F.3d 758, 766 (10th Cir.2000).  Plaintiffs merely contend that that these loan agreements were the product of fraud in the inducement.  For these reasons, the Court finds the dispute between the parties arises out of the business activities of associated persons of a member under Rule 13200.  *See Wells Fargo Advisors, LLC v. Quantum Fin. Partners LLC*,

No. 15-9145-JAR-JPO, 2015 WL 5053631 (D. Kan. Aug. 26, 2015).  On these grounds, in the alternative, Defendant's motion to compel arbitration is granted.

IV.     **Plaintiffs' Form U-4s Require Arbitration**

Both Plaintiffs signed a "Uniform Application for Securities Industry Registration or Transfer," also known as a Form U-4, as a part of their affiliation with Raymond James.  *See* Exs. C and D.  Section 15(A)(5) of the Form U-4 states, "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm…that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs indicated in Section 4…as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction."  *Id*.

This form constitutes an agreement to arbitrate and covers *any* dispute.  *Wells Fargo Advisors, LLC*, WL 5053631 at 4.  Plaintiffs assert that New Mexico law and not FINRA arbitration is proper based on Section 15(A)(2) of Form U-4.  Doc. 10 at 12.  Section 15(A)(2) discusses a registered representative's consent to follow provisions, conditions, covenants, statutes, constitutions, etc., of a legal jurisdiction and an SRO.  Ex. C, ¶ 2.  Plaintiffs' consent to follow the laws, rules, and regulations of FINRA and New Mexico does not prohibit them from submitting to arbitration given the application of the FAA and the other numerous arbitration agreements Plaintiffs signed.  For these reasons, the Court finds pursuant to Section 15(A)(5) of the signed Form U-4s, FINRA arbitration of the underlying disputes is required.

V.      **Post-Dispute Arbitration Agreements Require Arbitration**

Both Plaintiffs consented to arbitration of their disputes through signing the FINRA Arbitration Submission Agreements.  Exs. E and F.  Specifically, on August 8, 2023, Plaintiffs agreed to "submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related cross claims, counterclaims and/or third-party claims which may be asserted, to arbitration in

10

accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure." *Id*. Plaintiff Levy filed a second Arbitration Submission Agreement on August 16, 2023, after commencing this suit. Ex. G. Plaintiff Levy agreed to the same terms. *Id*. Plaintiffs contend all three agreements were filed because a default judgment would have occurred if they refused. Doc. 10 at 12.

Through each of the three FINRA Arbitration Submission Agreements, Plaintiffs again agreed to submit all claims, answers, cross claims, counterclaims, and third-party claims to arbitration. The record does not support a finding otherwise. The record does not support a finding establishing fraud in the inducement as to these agreements. Plaintiffs filed this action following their initial agreement to the Arbitration Submission Agreements and its terms. The record does not support a finding Plaintiffs took issue with or contested the proposed agreements' terms before consenting. As such, this Court finds Plaintiffs again agreed to arbitrate their disputes through the FINRA Arbitration Submission Agreements and therefore, arbitration is required.

**VI.   Defendant's Request to Stay Pending Arbitration is Appropriate**

The FAA provides, "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in the suit or proceeding is referrable to arbitration," the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C.§ 3; *See Dodson Int'l Parts, Inc. v. Williams Int'l Co. LLC,* 12 F.4th 1212, 1227 (10th Cir. 2021) citing, *Comanche Indian Tribe of Okla. v. 49, L.L.C.*, 391 F.3d 1129, 1131 n.4 (10th Cir. 2004).

Here, since arbitration of the parties' dispute is required, a stay pending arbitration is appropriate and therefore, granted.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel Arbitration (Doc. 3) is **GRANTED**.  **IT IS FURTHER ORDERED** that Defendant's request to stay this proceeding pending the arbitration outcome is **GRANTED**.

**IT IS THEREFORE ORDERED** that this case is stayed pending arbitration.

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE